Patrick Neal NERREN, Plaintiff-Appellee,

v.

LIVINGSTON POLICE DEPARTMENT;  Billy Ray Nelson, Sheriff;  and Bob Key,

Defendants,

and

Matthew Parrish, and Robert Alston, Defendants-Appellants.

No. **95-40331.**

United States Court of Appeals,

Fifth Circuit.

July 2, 1996.

Appeal from the United States District Court for the Eastern District of Texas.

Before HIGGINBOTHAM, WIENER and PARKER, Circuit Judges:

WIENER, Circuit Judge:

Plaintiff-Appellee Patrick Neal Nerren filed this pro se civil rights action against various police and jail officials under 42 U.S.C. s 1983, alleging the denial of reasonable medical attention in violation of the Fourteenth Amendment.  This appeal only involves Nerren's medical claims against the officers who arrested him.  They contend that the district court erred in denying their motion for summary judgment based on qualified immunity.  As Nerren has stated a claim under clearly established law, we affirm.

I

FACTS AND PROCEEDINGS

Nerren filed this pro se civil rights action under 42 U.S.C. s 1983 against the Livingston Police Department, Livingston Police Officer Matt Parish, Livingston Police Officer Robert Alston, Polk County Sheriff Billy Ray Nelson, and Polk County Officer Bob Key, alleging that he was denied medical care. This appeal, however, involves only the qualified immunity-based summary judgment motions of Officers Alston and Parish (Arresting Officers).  Viewed in the light most favorable to the nonmovant Nerren, the facts are as follows. [FN1]

FN1. See Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir.1994) (review of denial of qualified immunity based motion for summary judgment reviewed de novo considering the evidence in the light most favorable to the nonmovant).

On July 18, 1993, Nerren was involved in an automobile accident in Polk County, Texas.  Several people were injured.  By the time Officers Parish and Alston arrived at the accident scene, Nerren, the driver of one of the vehicles in the accident, had fled.  Several hours later while on routine patrol, Officer Alston spotted Nerren.  Alston radioed for back up and with the help of

Officers Parish and Ken Bohnert, [FN2] arrested Nerren.  At the time of the arrest, Nerren stated that he was in pain and requested medical attention. [FN3]  One of the Arresting Officers told Nerren that because he "didn't worry about the people he had the automobile accident **\*471** with the police where [sic] not worried about him."  Nerren was transported to the Polk County Jail without receiving any medical attention. [FN4]

FN2. Bohnert, though present at Nerren's arrest, was not named as a defendant in this suit.

FN3. In their affidavits, the officers state that Nerren never requested medical attention.

FN4. At the jail, Nerren renewed his request for medical attention, this time to Officer Key, the shift supervisor at the jail.  Officer Key responded "shut up and go to sleep."  These facts are important to the overall complaint, but are not relevant to this appeal, which assesses only Nerren's claim against the Arresting Officers.

The following day Nerren was released on bond and taken by a relative to the Lufkin Memorial Hospital.  Medical records reveal that at the time of his admission to the hospital, Nerren had abrasions on his face and chest. Additionally, the records indicate that a laparoscopic examination revealed a large amount (1000 ccs) of intra-abdominal blood.  Nerren had a torn liver and was taken to surgery.

In this suit Nerren alleges that the Arresting Officers knowingly and willfully denied him reasonable medical attention in violation of his substantive due process rights under the Fourteenth Amendment.  Officers Parish and Alston moved for summary judgment, arguing that Nerren failed to state a claim for the denial of medical care because (1) there was no evidence that they knew Nerren needed medical care;  (2) Nerren had not alleged causation of any injury by their actions;  and (3) they were entitled to qualified immunity because the law was not clearly established that they had a duty to provide medical care in the absence of an obvious or expressed need for such care.

The district court referred the case to a magistrate judge. After a hearing, the magistrate judge recommended dismissing Nerren's claims against the Livingston Police Department and Sheriff Nelson as frivolous pursuant to 28 U.S.C. s 1915(d), but recommended denying the Arresting Officers' qualified immunity based motions for summary judgment.  Applying the reasonable medical care standard applicable to pretrial detainees at that time, the magistrate judge held that Nerren's right to medical attention was clearly established, and that a genuine issue of material fact existed as to whether the defendants knew of Nerren's need for medical attention.

Parish and Alston filed objections. The district court overruled the objections and adopted the magistrate judge's report and recommendation, denying the defendants' motions for summary judgment. The court held that Nerren had stated a claim for the denial of reasonable medical care, a clearly established right. The Arresting Officers timely appealed.

## II
## DISCUSSION

### A. JURISDICTION

[1] We must first determine whether the district court's denial of the Arresting Officers' motions for summary judgment based on qualified immunity are immediately appealable orders. [FN5] In Mitchell v. Forsyth, [FN6] the Supreme Court held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. s 1291 notwithstanding the absence of a final judgment." [FN7] In Johnson v. Jones, [FN8] the Supreme Court appeared to narrow our interlocutory jurisdiction somewhat, holding that a district court's order, entered in a qualified immunity **\*472** case, is not appealable if it determines a question of "evidence sufficiency." [FN9] More recently, in Behrens v. Pelletier, [FN10] the Supreme Court clarified that Johnson "permits [the defendant] to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the Harlow standard of 'objective legal reasonableness.' " [FN11] Thus, in Behrens, the district court's determination that "material issues of fact remain" did not preclude appellate review. [FN12]

FN5. Mosley v. Cozby, 813 F.2d 659, 660 (5th Cir.1987) ("This Court must examine the basis of its jurisdiction, on its own motion, if necessary.").

FN6. 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

FN7. Id. at 530, 105 S.Ct. at 2817-18; see also Hale v. Townley, 45 F.3d 914, 918 (5th Cir.1995) ("An appellate court has jurisdiction to review an interlocutory denial of qualified immunity only to the extent that it 'turns on an issue of law.' " (quoting Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817)). In Mitchell, the Court held that a district court's order denying a defendant's motion for summary judgment was an immediately appealable collateral order under Cohen v. Beneficial Indus. Loan Corp., where (1) the defendant was a public official asserting a defense of immunity, and (2) the issue appealed concerned whether or not certain given facts showed a violation of clearly established law. Mitchell, 472 U.S. at 528, 105 S.Ct. at 2816-17.

FN8. Johnson v. Jones, --- U.S. ----, ----, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995).

FN9. Id. (holding that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial") (emphasis added).

FN10. --- U.S. ----, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).

FN11. Id. at ----, 116 S.Ct. at 840.

FN12. Id.

In the wake of Behrens, the Johnson modification (if any) on appellate review applies only when "what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred." [FN13] Thus, we cannot review the "evidence sufficiency issue" (i.e., whether the nonmovant presented sufficient summary judgment evidence to create a dispute of fact). But we retain interlocutory jurisdiction to "take, as given, the facts that the district court assumed when it denied summary judgment" [FN14] and determine whether these facts state a claim under clearly established law.

FN13. Id.

FN14. Johnson, --- U.S. at ----, 115 S.Ct. at 2159.

Applying the Johnson-Behrens gloss on Mitchell to the instant case, we conclude that the disputes of fact in this case do not deprive us of jurisdiction. We have interlocutory jurisdiction to determine whether Nerren's summary judgment facts state a claim under clearly established law. Accordingly, we ignore the disputes of fact, take those facts assumed by the district court in a light most favorable to Nerren, and determine whether under those facts Nerren has stated a claim under clearly established law.

B. STANDARD OF REVIEW

[2] We review de novo the denial of a public official's motion for summary judgment predicated on qualified immunity. [FN15] As Nerren is proceeding pro se, we will construe his complaint liberally. [FN16]

FN15. Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir.1994).

FN16. S.E.C. v. AMX, Intern., Inc., 7 F.3d 71 (5th Cir.1993) (when litigant is pro se, his allegations and briefs were construed more permissively); Johnson v. Atkins, 999 F.2d 99 (5th Cir.1993) (pro se complaint is to be construed liberally).

C. NERREN'S CLAIM

First, we must parse Nerren's complaint. As already noted, Nerren alleges that by denying him medical attention, both police and jail officials, deprived him of his due process rights under the Fourteenth Amendment. This appeal, however, deals with but a single facet of Nerren's complaint--namely, the allegations that, in the time interval between his arrest and booking, the Arresting Officers denied him medical attention. [FN17] In other words, we here address only Nerren's claims that his substantive due process rights were violated while he was an arrestee.

FN17. Apparently, Nerren has also alleged that he was later denied medical attention by, inter alia, the prison officials themselves. These claims are not addressed in this appeal.

D. ARRESTEES AND PRETRIAL DETAINEES

[3] Today, we make explicit that which was heretofore either implicit or taken for granted in our case law: An arrestee's complaint for denial of substantive due process and a pretrial detainee's complaint for denial of substantive due process are evaluated under the same standards. [FN18] We discern no reason to carve out a separate standard for **\*473** arrestees, a subset of pretrial detainees. [FN19] After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment. [FN20]

FN18. See e.g. Fields v. City of South Houston, Texas, 922 F.2d 1183 (5th Cir.1991) (applying pretrial detainee standards to an arrestee's claim that arresting officer denied arrestee medical attention).

FN19. Bell v. Wolfish, 441 U.S. 520, 523, 99 S.Ct. 1861, 1865-66, 60 L.Ed.2d 447 (1979).

FN20. This holding leaves unmolested an arrestee's additional and specific Fourth Amendment protections to be free from an unreasonable arrest and excessive force at the time of arrest. As we said in Valencia v. Wiggins, 981 F.2d 1440, 1443 (5th Cir.1993), "[a]s the Fourth Amendment protects against unreasonable 'seizures,' it seems primarily directed to the initial act of restraining an individual's liberty, such as an investigatory stop or arrest." An arrestee's Fourteenth Amendment due process rights are in addition to and overlap with that protection. We simply recognize that arrestees as a subset of pretrial detainees have substantive due process rights under the Fourteenth Amendment which are, as Judge Friendly said, "quite apart from any 'specific' of the Bill of Rights." Johnson v. Glick 481 F.2d 1028, 1032 (2d Cir.1972).

## E. QUALIFIED IMMUNITY

[4] Assessing the defense of qualified immunity is a two-step process. [FN21] First, using "currently applicable constitutional standards," [FN22] we determine whether the plaintiff has "allege[d] the violation of a clearly established constitutional right." [FN23] If so, we then decide if the defendant's conduct was objectively reasonable, because " '[e]ven if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable.' " [FN24]

FN21. See Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir.1992).

FN22. Rankin v. Klevenhagen, 5 F.3d 103, 106 (5th Cir.1993).

FN23. Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

FN24. Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir.1993) (quoting Salas, 980 F.2d at 310).

### 1. Currently Applicable Law

[5] Under currently applicable constitutional standards, Nerren has stated a claim for the denial of his substantive due process rights. Recently, we held that a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights. [FN25] We then defined subjective deliberate indifference as subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference. [FN26]

FN25. Hare v. City of Corinth, 74 F.3d 633, 647–48 (5th Cir.1996) (en banc). Although the district court did not and could not have considered Nerren's complaint in light of Hare, to vacate and remand for reconsideration based on Hare is unnecessary for two reasons. First, we have de novo review over the legal aspects of a interlocutory qualified immunity based motion for summary judgment. Second, Hare is a Fifth Circuit "housekeeping" opinion; a single opinion that clearly and concisely articulates and unifies our court's case law in this area.

FN26. Id. at 650.

In the instant case, Nerren has alleged that his face and chest were marred with abrasions, he was in pain, and he informed the Arresting Officers that he needed medical attention. Moreover, the police had subjective knowledge that Nerren had recently been involved in a multiple vehicle injury accident. Nevertheless,

after allegedly acknowledging Nerren's request of and need for medical attention, the Arresting Officers denied his request for the express reason that he had fled the scene of the accident without regard for the plight of the other victims. Accepting Nerren's allegations as true, the Arresting Officers had subjective knowledge of Nerren's need of medical attention yet turned a deaf ear to his request. If the evidence at trial supports these allegations, a reasonable juror could conclude that the Arresting Officers were deliberately indifferent to Nerren's constitutional right to medical attention. [FN27] Thus, Nerren has cleared the first hurdle of qualified immunity: Under currently applicable law, Nerren has alleged a violation of a clearly established right.

FN27. There is sufficient summary judgment evidence to raise a fact issue as to the Arresting Officers' deliberate indifference, thereby precluding summary judgment.

**\*474** 2. Objectively Reasonable?
[6] Next, we must turn back the judicial clock to 1993 and determine if the Arresting Officers' conduct was nonetheless objectively reasonable at that time. We conclude that it was not. At least since 1987, it has been clear that pretrial detainees, a set that includes arrestees, are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective. [FN28] A pretrial detainee's specific right to medical attention has evolved over time from his general right to be free from punishment. Pretrial detainees, as distinguished from convicted prisoners, are those individuals who have been charged with a crime but who have yet to be tried on the charge. [FN29]

FN28. Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir.1990) (citing Bell, 441 U.S. at 535, 99 S.Ct. at 1871-72); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir.1987).

FN29. Bell, 441 U.S. at 523, 99 S.Ct. at 1865-66.

[7] We contrast pretrial detainees and convicted prisoners because the due process clause of the Fourteenth Amendment accords pretrial detainees rights not enjoyed by convicted inmates under the Eighth Amendment prohibition against cruel and unusual punishment. [FN30] Specifically, "while a sentenced inmate may be punished in any fashion not cruel and unusual, the due process clause forbids punishment of a person held in custody awaiting trial but not yet adjudged guilty of any crime." [FN31] This standard, applied to medical attention, "entitles pretrial detainees to reasonable medical care unless the failure to supply it is reasonably related to a legitimate governmental objective." [FN32]

FN30. Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir.1981) (en banc), overruled on other grounds, 790 F.2d 1174 (1986).

FN31. Id. (emphasis added);  see also Valencia, 981 F.2d at 1445 (citing Bell 441 U.S. at 539, 99 S.Ct. at 1874) ("[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.").

FN32. Jones, 636 F.2d at 1378.

[8] The Arresting Officers have failed to present a legitimate governmental objective for denying Nerren medical attention. Moreover, Nerren has alleged facts presented sufficient summary judgment evidence from which a reasonable juror could find an expressed intent to punish:  The Arresting Officers' statements implied that they were refusing medical attention to Nerren because he was not concerned about the other accident victims.  From this a reasonable juror could conclude that Nerren was denied medical attention as punishment for fleeing the accident.  It is inescapable that such a punishment could not be objectively reasonable conduct by the Arresting Officers because Nerren was not subject to any punishment.  His punishment, nevertheless, came in the form of the denial of his constitutional right to medical attention.  In sum, whether Nerren's allegations are analyzed under a pretrial detainee's more general right under Bell and Valencia to be free from punishment or his more specific right to medical attention announced in Jones and Hare, Nerren has stated a claim and the Arresting Officers' conduct was objectively unreasonable. We thus conclude that the district court's denial of the Arresting Officers' motion for summary judgment is correct.
For the foregoing reasons, the judgment of the district court is
AFFIRMED.